J-A23025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF: Z.T., A MINOR

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: M.T., BIOLOGICAL FATHER

No. 322 WDA 2014

Appeal from the Decree entered January 28, 2014,
in the Court of Common Pleas of Allegheny County,
Orphans' Court, at No(s): A-13-087

BEFORE:  DONOHUE, ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED OCTOBER 07, 2014**

M.T. ("Father") appeals from the decree terminating his parental rights to his son, Z.T., born in September of 2002.  We affirm.[1]

On August 9, 2013, A.M. ("Mother") and her husband, J.M. ("Stepfather"), filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).  Attached to the involuntary termination petition is a consent of the adult intending to adopt, which was executed by Stepfather on June 19, 2013.  **See** Petition, 8/9/13, at Exhibit C.  The orphans' court held a hearing on the petition on January 17, 2014, during which the following witnesses testified:  Mother; Stepfather; Father; P.B., Father's friend; and C.H., Father's girlfriend.

---

[1] The Guardian *Ad Litem* ("GAL") also filed a brief in this matter, stating that the orphans' court "had abundant competent evidence to support its determination to terminate Father's rights and some of that evidence came from Father's own testimony and admissions."  GAL Brief at 9.  Further, the GAL states that "abundant competent evidence" exists to support the court's determination that terminating Father's parental rights will serve the needs and welfare of Z.T.  *Id.* at 19-20.

Because the parties are well acquainted with the details of this case, and the orphans' court has ably recounted the facts of record, we adopt them here. **See** Orphans' Court Opinion, 3/20/14, at 1-3.[2]

By decree dated January 28, 2014, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father presents the following issues for our review:

> I. Whether the [orphans'] court erred in finding that [Father] had, for a period of at least six (6) months preceding the filing of the petition for termination of parental rights, evidenced a settled purpose of relinquishing his parental claim to . . . [Z.T.], and/or had refused to perform his parental duties?

> II. Whether the [orphans'] court erred in finding that the termination of [Father's] parental rights best serve[d] the development[al], physical and emotional needs[] and welfare of [Z.T.]?

Father's Brief at 5.

We review the decree involuntarily terminating Father's parental rights according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are

---

[2] The orphans' court opinion pursuant to Pa.R.A.P. 1925(a) is not paginated. Therefore, we have assigned each page a sequential number for ease of reference.

supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [___ Pa. ___, ___, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [___ Pa. ___], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b):

determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provide as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1), (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). Further:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has emphasized that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted). We have explained:

> A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . [the child's] physical and emotional needs.

*Id.*

With respect to Section 2511(b), this Court has explained the requisite

analysis as follows:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

- 6 -

With respect to Section 2511(a)(1), Father contends that he "was being prevented from seeing his son due to" Mother. Father's Brief at 13. Specifically, Father argues that Mother "had already filed two erroneous PFA's [Protection from Abuse petitions] against [Father] and there was a legitimate fear by [Father] that another PFA would be filed against him if he attempted to contact his son."[3] *Id.* In addition, in prior custody proceedings between the parties, Father and Mother were ordered by the trial court to contact a reunification counselor for the purpose of Father obtaining partial physical custody of Z.T. Father states that he never participated in reunification counseling because he "mistakenly left the issue of reunification counseling in the hands of his previous counsel [in the custody proceedings] and Mother's attorney. [Father's] previous counsel failed to do her job." *Id.* at 14.

With respect to Section 2511(b), Father acknowledges that Z.T. "is doing well in his current situation. . . ." Father's Brief at 15. Father also acknowledges that the bond between him and Z.T. is "miniscule." *Id.* However, Father contends that he "had a strong bond with his child until Mother did whatever was in her power to destroy that bond." *Id.* Father

---

[3] Mother testified that the court issued two separate PFA orders against Father after their marital separation. N.T., 1/17/14, at 18. Father testified that the second PFA order was issued against him on June 29, 2011. *Id.* at 92. Father acknowledged on cross-examination by Mother's counsel that he did not see Z.T. during the entire year of 2011, even though the aforesaid PFA order expired after only four months. *Id.* at 94. Notably, in his testimony, Father failed to acknowledge that his conduct resulted in the PFA orders issued against him.

further claims that he has not gained a strong bond with Z.T. because of failures by his counsel in the custody proceedings.

Upon careful review, we conclude the testimonial evidence supports the decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). We therefore discern no abuse of discretion by the orphans' court. Furthermore, we adopt as dispositive of Father's issues on appeal the orphans' court's opinion pursuant to Pa.R.A.P. 1925(a). **See** Trial Court Opinion, 3/20/14. The parties are directed to attach a copy of the Rule 1925(a) opinion in the event of further proceedings.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014

- 8 -

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

IN RE: ADOPTION OF Z.T.,
a minor.

No. A 087 of 2013

**OPINION**

Filed on behalf of:

JOHN A. ZOTTOLA, J.

Copies sent to:

**MARGARET G. GOLD, ESQ.**
P.O. BOX 176
CABOT, PA 16023
412-480-5589

**ELIZABETH A. BEROES, ESQ.**
4054 PENN AVENUE
PITTSBURGH, PA 15224
412-621-6811

**CHESTER V. BEATTIE, ESQ.**
ONE GATEWAY CENTER
SUITE 700
420 FORT DUQUESNE BLVD.
PITTSBURGH, PA 15222
412-281-5110



EXHIBIT
A

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

IN RE:                                    )        ORPHANS' COURT DIVISION
                                          )
ADOPTION OF Z.T.,                         )        No. 087 of 2013
a minor                                   )

OPINION

M.T. ("Appellant") has appealed from this Court's Order dated January 28, 2014, which terminated his parental rights, pursuant to 23 Pa.C.S.A. § 2511(a)(1).

Z.T., born September 8, 2002, is the biological child of A.M. (hereinafter "Mother") and Appellant. Mother and Appellant were married on July 3, 1999; Mother and Z.T. left the marital residence in January of 2009, and, on February 23, 2009, Mother filed a complaint in Divorce. After a judicial conciliation on April, 12, 2010, Mother was awarded primary physical and legal custody of Z.T. A Divorce Decree was entered on April 26, 2011.

After leaving the marital residence in 2009, Mother became involved with J.M. (hereinafter "Stepfather"). In November of 2011 Mother and Z.T. moved into a house with Stepfather. On December 31, 2011, Mother and Stepfather were married, and remain so through present day. Z.T. has since resided with Mother and Stepfather, and has exhibited a positive and loving relationship with Stepfather, such that Z.T. has even expressed his desire to be adopted by Stepfather and to assume the same last name. Stepfather also has a daughter, from a previous marriage, who is nearly the same age as Z.T., and the two share a sibling-like bond. Additionally, Z.T. has been integrated into Stepfather's extended family, which is numerous and close knit. Z.T. has been described as a well-adjusted and happy child, who earns mostly A's in school, and

participates in community sports and other activities such as band. On several occasions Z.T. has expressed to various persons that he is somewhat fearful of Appellant, his biological father.

Z.T.'s relationship with Appellant has been sporadic since 2009 when he and Mother left Appellant's household. During conciliation Appellant refused supervised visits with Z.T., and from early 2009 until June 27, 2010 Appellant did not physically visit his son, nor did he communicate with him by phone or other means. From June 27, 2010 until October 20, 2010 Appellant engaged in 12 of 18 scheduled supervised visits with Z.T. A number of supervised visits also took place from December of 2010 through June of 2011. These visits ceased, however, because a Protection from Abuse ("PFA") Order was issued against Appellant on July 11, 2011, as a result of several incidents whereupon he followed Mother and Z.T. by vehicle after the supervised visits.

Appellant filed a Petition for Modification, which was denied on August 19, 2011. On December 12, 2012, a hearing was held before Hearing Officer Laura Valles, at which it was ordered that the parties arrange reunification counseling, to determine whether Z.T. was open to reunification with Appellant. However, when Patricia Korb, the individual recommended for the counseling, indicated her inability to provide the service, Appellant failed to act diligently to find a substitute, and instead blames the attorneys for the failure to do so.

On August 9, 2013, Mother and Stepfather filed a Petition for Involuntary Termination of Parental Rights, seeking to terminate the rights of Appellant; the couple

simultaneously filed a Petition for Adoption on behalf of Stepfather.[1]  On November 1, 2013, Margaret M. Gold was appointed Guardian *ad litem* for Z.T.

This Court held a hearing regarding the Termination of Parental Rights on January 17, 2014.  At the hearing it was established that Appellant had not seen Z.T. since June of 2011 during a supervised visit, except for a brief moment in December of 2012 during the funeral of Appellant's mother, where Appellant saw a glance of his son as he rushed out of the funeral home with Mother to avoid a run-in with Appellant. Following this incident, Appellant was escorted out of the funeral home by police.

The only other attempted contact by Appellant was a Christmas Card sent in 2012, which was returned unopened by mail with a return receipt dated January 13, 2013.  No further contact was attempted by Appellant in the months leading up to the filing of the Petition for Involuntary Termination.  However, Appellant offered several excuses for his failure to maintain contact with Z.T. during this time, ranging from his operations, three months spent in a coma, the PFA which was in place for a mere four months of the time, and failure by the attorneys to set up visits and reunification counseling.  Essentially, Appellant has placed the blame for his lack of presence in his son's life on everyone other than himself, and cites minor obstacles as reasons for his failure to maintain a relationship with his son.

On January 28, 2014, this Court issued an Order terminating the parental rights of Appellant under 23 Pa.C.S.A. § 2511(a)(1) and finding, in accordance with 23 Pa.C.S.A. § 2511(b), that such termination best serves the developmental, physical, and emotional needs and welfare of the child.  On February 26, 2014, Appellant filed a

---

[1] The Petition for Involuntary Termination of Parental Rights was initially filed on behalf of Stepfather, however, at the hearing on January 17, 2014, the parties agreed that Mother was also joined in the Petition. See N.T., Hearing, 01/17/14, pp. 58-9.

Notice of Appeal and a Concise Statement of Errors pursuant to Pa.R.A.P. 1925(b), wherein he avers the following:

1. The Trial Court erred in finding that there was a legal basis established for terminating the parental rights of Appellant.

2. The Trial Court erred in finding that Appellant had, for a period of at least six (6) months preceding the filing of the Petition for Involuntary Termination of Parental Rights, evidenced a settled purpose of relinquishing his parental claim to the minor child, [Z.T.], and/or had refused to perform his parental duties.

3. The Trial Court erred in finding that the termination of Appellant's parental rights best serves the development, physical and emotional needs, and welfare of the minor child.

An appellate court reviews a termination of parental rights to determine whether the decision is supported by competent evidence; absent an abuse of discretion, error of law, or insufficient evidentiary support the decree must stand. In re G.P.-R., 851 A.2d 967, 972 (Pa. Super. 2004). "[A]n abuse of discretion occurs when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." Id. at 973 (internal quotations omitted). Additionally, as the finder of fact, the trial court "is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact." In re K.Z.S., 946 A.2d 753, 757 (Pa. Super. 2008). In a proceeding to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to demonstrate by clear and convincing evidence that the statutory requirements for termination are satisfied. In re C.M.S., 884 A.2d 1284, 1291 (Pa. Super. 2005).

This Court found that grounds for involuntary termination of Appellant's parental rights was appropriate under 23 Pa.C.S.A. § 2511(a)(1), which reads:

**§ 2511. Grounds for involuntary termination.**
**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

This provision "does not require a showing of both an intention to relinquish parental control and a failure to perform parental duties," rather, only one of these must be established for purposes of termination. Commonwealth v. Arnold, 665 A.2d 836, 839 (Pa. Super. 1995). Once the statutory period of six months has expired, a mere renewal of interest in the discarded child, or a declaration of the absent parent's wish not to have his parental rights terminated, does not protect parental rights or negate the previous failure to fulfill parental obligations. Id. at 840; In re E.S.M., 622 A.2d 388, 392 (Pa. Super. 1993).

Although the six months immediately preceding the filing of the petition for termination must be most heavily scrutinized, the Court will consider the whole history of a given case and individual circumstances, including "all explanations offered by the parent facing termination of his or her parental rights." In re B.,N.M., 856 A.2d 847, 855 (Pa. Super. 2004). The Court must determine if the evidence and circumstances presented clearly warrants granting the involuntary termination. Id.

Appellant, for more than the required six-month period, has not seen or spoken to his son. Indeed, he has not seen his son since June of 2011, nearly 3 years. He has failed to fulfill his parental duties, and has been absent in his child's life, leaving the void to be filled by his child's stepfather. Appellant has elucidated several trivial obstacles as reasons for his absence, including a short stint he spent in a coma, and a PFA which

was only in place for four months. These excuses may explain why he was not fulfilling his fatherly duties during the specified time periods, but they do not explain his absence in Z.T.'s life for the entire time, or even for the 6 months prior to the filing of the petition, which is the most critical time period in this Court's analysis. See B.,N.M., supra.

Notably, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and *not yield to every problem*, in order to maintain the parent-child relationship to the best of his or her ability, *even in difficult circumstances*." Id. at 855 (emphasis added). A parent need not perform the impossible, but he "has the duty to exert himself, to take and maintain a place of importance in the child's life." Id. at 856. In B.,N.M., the Superior Court determined that a father who was incarcerated, circumstances clearly more obstructive to a person's ability to be an involved parent than those presented in this case, had failed to sufficiently exert himself to maintain a relationship with his child, and the court found grounds for involuntary termination. Here, Appellant was afforded several opportunities to mend his relationship with his son and assume a more active role in his son's life, however, he failed to be proactive, and instead has formed incessant excuses for his failure to be involved in his son's life for the last several years. Accordingly, the evidence of record sufficiently establishes grounds for involuntary termination of Appellant's parental rights under 23 Pa.C.S.A. § 2511(a)(1).

After determining that the requirements for involuntary termination under Section 2511(a) have been met, the Court next assumes an analysis under Section 2511(b), which provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and

emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

Under the subsection (b) analysis, the Court considers the child's safety needs, any bond between the parent facing termination and the child, possible detrimental effects of severing that bond, and intangibles such as love, comfort, security, and stability the child has from his other parental figures. In re K.Z.S., 946 A.2d at 763. The needs of a child are of paramount importance, and cannot be satisfied by a merely passive and uninvolved interest in the child's development and wellbeing. See In re Burns, 379 A.2d 535, 540 (Pa. 1977).

The record reflects that Z.T. is thriving in his current situation; he receives mostly A's in school, and he is involved in several extracurricular activities. More importantly, however, he is in a loving environment, complete with two positive parental figures in the form of his mother and his stepfather, and a stepsister with whom he has a sibling-like bond. The child has expressed his desire to be integrated into his Stepfather's family, and to be adopted by Stepfather. Furthermore, Appellant has had multiple PFAs against him, and has acted menacingly in the past, such that the child has exhibited a fear of Appellant. See, e.g., Hearing Officer's Report, 12/10/12, p. 2 (finding that Mother credibly testified that Z.T. is scared of Appellant and does not feel comfortable with him); Report of Guardian Ad Litem, 12/27/13, p. 11 (noting that Z.T. said that he is very afraid of his father, and remembers several of his father's violent outbursts). The bond between the Z.T. and Appellant is miniscule at best, and no harm will befall the child if

the relationship is completely severed; rather, Z.T. will remain in a healthy and safe environment, and will no longer have to endure his father's erratic behavior and infrequent resurfacing in his life.

Accordingly, this Court properly determined, under 23 Pa.C.S.A. § 2511(a)(1), that involuntary termination of the parental rights of Appellant was appropriate given the totality of the circumstances. This Court further found that such termination of Appellant's parental rights best serves the child's developmental, physical and emotional needs and welfare pursuant to 23 Pa.C.S.A. § 2511(b).

BY THE COURT

DATED: March 19, 2014

ZOTTOLA, J.